UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 21-cr-306-APM |
| JON SCHAFFER, | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD DEPARTURE FOR SUBSTANTIAL ASSISTANCE, AND MOTION FOR LEAVE TO FILE REDACTED SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jon Schaffer to three years of supervised probation, as well as an order that the defendant pay $2,000 in restitution and the mandatory $200 special assessment. Such a sentence would be sufficient to reflect the seriousness of this offense while also accounting for the three months defendant was detained following his arrest, the defendant's early acceptance of responsibility, and the substantial assistance he has provided to law enforcement pursuant to his cooperation plea agreement. To the extent that this memorandum discusses certain aspects of the defendant's cooperation in detail, the government seeks leave to file a redacted version of this memorandum on the public docket and will separately move to file the unredacted memorandum under seal.

I.   **INTRODUCTION**

On the afternoon of January 6, when it became clear that Congress was going forward with the certification of the 2020 presidential election, Defendant Schaffer joined a mob of rioters on

1

the west side of the United States Capitol that pushed past police officers and into the building. The defendant was one of the first six people to breach the Capitol through the doors on the northwest side of the building near the Senate Parliamentarian's office. Schaffer wore a tactical vest and a hat that read, "Oath Keepers Lifetime Member," and he was carrying a can of bear spray. The menacing conduct of Schaffer and the others at the front of the line forced officers to retreat and allowed the mob to start pouring into the Capitol through this entrance.

The defendant's participation in the attack on the Capitol was not random; it was the culmination of weeks, if not months of increasingly violent calls by Elmer Stewart Rhodes III, the leader of the Oath Keepers, to oppose the lawful transfer of power from Donald Trump to Joseph Biden. Schaffer was privy to some of these communications, as an Oath Keepers member, and he marched with the Oath Keepers during an event in D.C. in November 2020 to oppose the results of the election.

At the same time, Schaffer did not participate in the Oath Keepers' planning and coordination for the attack on the Capitol (he was not part of any of the group's encrypted chats for the January 6 operation), and he did not enter the Capitol with them on January 6. For this reason, Schaffer was not charged with participating in a conspiracy with other Oath Keepers. Furthermore, Schaffer was inside the Capitol for less than ten minutes and did not directly harm or seek to harm any officers or property during this offense. Schaffer also has been cooperative with law enforcement since he turned himself in eleven days after the attack, proffering several times with law enforcement and providing fulsome, credible, and relevant information as described below.

On April 16, 2021, the defendant fully accepted responsibility and pled guilty, pursuant to

a cooperation plea agreement, to one count of Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), and one count of entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A). The defendant was the first person to plead guilty to participating in the January 6 attack, and he agreed to permit the details of his cooperation plea agreement to be made public.

II.     FACTUAL BACKGROUND

   A.     The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 30, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the 2020 presidential election.

   B.     The Defendant's Conduct Prior to January 6

On November 14, 2020, Schaffer was in Washington, D.C. to attend the "Million MAGA March." ECF 30 at ¶6. As depicted in the photographs below, Schaffer participated alongside other members of the Oath Keeper, including Kelly Meggs and Connie Meggs, to protest the 2020 presidential election result. *Id.*



During an interview with a journalist at the march, Schaffer stated the following:

> A group of thugs and criminals hijacked this country a long time ago. And now they're making their big move, and it's not gonna happen. . . . People need to wake up and snap out of the Matrix because they're going down. They made the move, they're messing with the wrong people here, trust me on that. And we needed it to be open like this. Open fraud. Open theft. Because now we see you, and you're going down, mark my words.

*Id.* Schaffer was specifically asked by the journalist if he expected the November 14 march to lead to violence, to which he responded: "[I]f somebody wants to bring violence, I think there's a lot of us here that are ready for it. We don't want that, but if they bring it, we're going to respond to that, trust me." *Id.* at ¶7. Schaffer also stated:

> We're not going to merge into some globalist, communist system. It will not happen. There will be a lot of bloodshed if it comes down to that, trust me. The American people will not go for that bullshit once they understand what's actually happening. So that's where we're at. Nobody wants this, but they're pushing us to a point where we have no choice.

*Id.*

In the weeks that followed, the Oath Keepers' leader used increasingly violent rhetoric to encourage the group's members to forcibly oppose the results of the election. For example, on December 14, 2020, in response to the November 2020 Presidential election, Rhodes published on the Oath Keepers' website a letter titled, "Open letter to President Trump: You Must Use Insurrection Act to 'Stop the Steal' and Defeat the Coup." *U.S. v. Rhodes, et al.*, No. 22-cr-15, Gov. Ex. 1005, admitted 10/7/2022. Citing "well-orchestrated mass vote fraud" resulting in the "install[ation]" by "Communist Chinese and their domestic enemy allies" of "illegitimate puppet, Joe Biden," Rhodes implored President Trump to:

> [A]ct NOW as a wartime President, pursuant to your oath to defend the

4

> Constitution, which is very similar to the oath all of us veterans swore. We are already in a fight. It's better to wage it with you as Commander-in-Chief than to have you comply with a fraudulent election, leave office, and leave the White House in the hands of illegitimate usurpers and Chinese puppets. Please don't do it. Do NOT concede, and do NOT wait until January 20, 2021. Strike now.

*Id.* Rhodes further warned: "If you fail to act while you are still in office, we the people will have to fight a bloody civil war and revolution against these two illegitimate Communist Chinese puppets, and their illegitimate regime." *Id.* Rhodes ultimately requested in this letter that President Trump "[i]ssue a Presidential Proclamation, directly invoking the Insurrection Act, declaring an insurrection, rebellion, and coup to be in effect by domestic enemies of the U.S. Constitution and traitors who are in collusion with and/or acting as agents of a foreign enemy (specifically Communist China, but also other known or unknown foreign enemies) and to call up the militia (including the National Guard, us veterans, and patriotic Americans of military age) and US military to suppress the insurrection." *Id.* As a member of the Oath Keepers, Schaffer would have received a copy of this posting by e-mail. *See U.S. v. Parker, et al.*, 21-cr-28, Tr. at 4812 (testimony of former Florida Oath Keeper leader Michael Adams that Rhodes' posts to the Oath Keepers' website would get sent out by e-mail to all members).

On the morning of January 6, 2021, Schaffer was in D.C. again, attending the "Stop the Steal" rally at the Ellipse in Washington, D.C., which was organized to protest the result of the presidential election. ECF 30 at ¶8. As noted above, Schaffer wore a tactical vest and a hat that read, "Oath Keepers Lifetime Member." *Id.* Schaffer also carried on his person bear spray, which is a chemical irritant used to ward off bears. *Id.* Bear spray is not intended for use against humans and qualifies as a dangerous weapon. *Id.*

5

C.     The Defendant's Role in the January 6, 2021 Attack on the Capitol

As the "Stop the Steal" rally was finishing, Schaffer joined a large crowd that marched from the Ellipse to the Capitol, where the Joint Session to certify the Electoral College vote was underway-a fact of which Schaffer was aware. ECF 30 at ¶9. During the march to the Capitol, Schaffer learned that Vice President Pence planned to go forward with the Electoral College vote certification. *Id.* After arriving on Capitol grounds, Schaffer walked through a dense crowd of people, past barriers that restricted access to the public, and right up to a set of doors located on the west side of the Capitol building. *Id.*

At approximately 2:40 p.m., as legislators and their staff were being evacuated to secure locations, Schaffer positioned himself at the front of a large mob that broke open the Capitol building doors near the Senate Parliamentarian's office, on the northwest side of the building, being guarded by four Capitol Police officers wearing riot gear. ECF 30 at ¶10. Defendant Schaffer was among the first six individuals to push past the damaged doors and force the officers to retreat. *Id.* Government's Exhibit 1, a video clip from Capitol CCTV which will be shared with the Court and counsel under separate cover, captures the defendant's entry into the building.

As the mob swelled inside, and officers were being assaulted, Schaffer and other members of the mob continued to advance while aggressively gesturing toward a row of five to six backpedaling officers trying to maintain a security line in front of them. *Id.* These photographs, which were submitted as part of the statement of facts in support of the criminal complaint for Schaffer's arrest, depict Schaffer during this time:

6



The officers' effort to withstand the advance of Schaffer and the rest of the mob quickly failed, and the officers ultimately deployed a chemical irritant to disperse the mob. ECF 30 at ¶10. Schaffer was among those who were sprayed in the face by the irritant. *Id.* Schaffer thereafter exited the building, with his unholstered bear spray in hand, through the same doors that he had entered approximately nine minutes earlier. *Id.*



### III. THE CHARGES AND PLEA AGREEMENT

On April 16, 2021, Schaffer waived his right to be indicted and pled guilty to an

Information charging him with Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), and entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A).

IV.     **STATUTORY PENALTIES**

As noted by the Presentence Report issued by the U.S. Probation Office, on count one, Schaffer faces up to 20 years of imprisonment; on count two, Schaffer faces up to 10 years of imprisonment. ECF 63 at ¶4. Each charge also carries a term of supervised release of not more than three years, a fine of up to $250,000, restitution, and a mandatory special assessment of $100. *Id.*

V.     **THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS**

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c) and § 1B1.1, cmt. (background). The Guidelines apply to a "heartland of typical cases." *Koon v. United States*, 518 U.S. 81, 94-95 (1996). A "departure" is based on "the framework set out in the Guidelines," while a "variance" is imposed "outside the guidelines framework" based under the applicable 18 U.S.C. § 3553(a) factors taken as a whole. *United States v. Murray*, 897 F.3d 298, 309 n.8 (D.C. Cir. 2018) (cleaned up).

A.     **The Calculation of the Parties and the Presentence Report**

At the time of the plea agreement, the parties estimated Schaffer's total offense level to be 22, resulting in a Guidelines range of 41 to 51 months' imprisonment. However, this estimate was based on the presumption of the applicability of that two specific offense characteristics under

8

U.S.S.G. § 2J1.2 having to do with the interference with the administration of justice. Since that time, the D.C. Circuit decided *United States v. Brock*, No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024), which held that the term "administration of justice," as used in U.S.S.G. § 2J1.2, does not apply to Congress' certification of electoral college votes. *See id*. at *8. Accordingly, the enhancement in U.S.S.G. § 2J1.2(b)(2), which requires a three-level enhancement "[i]f the offense resulted in substantial interference with the administration of justice," does not apply where a defendant interfered solely with the certification of electoral college votes. U.S.S.G. § 2J1.2(b)(2); *Brock*, 2024 WL 875795, at *15. This holding also precludes application of the eight-level enhancement in U.S.S.G. § 2J1.2(b)(1)(B), which applies if an offense "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice," to defendants who interfered solely with Congress' certification of electoral college votes.

Thus, as calculated by the final Presentence Report, ECF 63 at ¶¶84-99, the following Sentencing Guidelines sections apply:

| U.S.S.G. § 2J1.2 | Base Offense Level | 14 |
|---|---|---|
| U.S.S.G. §3E1.1(a) | Acceptance of Responsibility | -2 |
| | Total | 12 |

The Presentence Report correctly concluded that the defendant does not meet the criteria at USSG §4C1.1, as he was carrying bear spray, a dangerous weapon, in connection with the offense. USSG §4C1.1(a)(7). The two counts of conviction are grouped for guideline calculation purposes because they involve the same victim and one or more acts or transactions. U.S.S.G. §3D1.2(b).

At a level 12, the recommended sentencing range would be 10 to 16 months of incarceration.[1]

## B.  Downward Departure for Substantial Assistance

The government moves, pursuant to U.S.S.G. § 5K1.1, for a downward departure for the substantial assistance Schaffer has provided to law enforcement. The government submits that a four-level downward departure is appropriate given the level and nature of assistance Schaffer has provided.

The Guidelines provide that, "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. In determining the appropriate level of reduction to apply, the Court should consider the following factors:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

---

[1] In other cases, following the Circuit's decision in *Brock*, the government has asked the Court to depart upward under Section 5K2.7 (Disruption of Governmental Function), and/or Section 5K2.6 (Weapons). The government is not advocating for such departures here, because the parties agreed under the terms of the plea agreement to not advocate for any upward or downward departures outside of the departure for substantial assistance to law enforcement. ECF 29 at 4.

U.S.S.G. § 5K1.1(a).

Here, the second and fifth factors clearly apply and can be quickly addressed. Schaffer turned himself in to law enforcement on January 17, 2021, and very quickly conveyed through his counsel his desire to plead guilty and cooperate with law enforcement. Schaffer then became the first defendant to plead guilty to an offense relating to January 6. In sum, Schaffer's cooperation has been extremely timely. U.S.S.G. § 5K1.1(a)(5).

Schaffer's cooperation has also been truthful, complete, and reliable. Much of the information he provided has been corroborated by other witnesses and objective evidence such as messages, video, photographs, and other data recovered from his phone, from public source information and articles, and from the devices and accounts of others recovered by law enforcement during this investigation. In other words, the second factor listed above also supports a finding of substantial assistance by Schaffer. U.S.S.G. § 5K1.1(a)(5).

This cooperation was not without risks. To be the first person to plead guilty, and to do so pursuant to a public cooperation plea agreement, in a case that has garnered such national interest and, sadly, controversy, took courage on Schaffer's part. While the government is not aware of any direct threats to Schaffer or his family, other individuals who cooperated publicly with the government in this investigation have received such threats. Thus, this court should give Schaffer credit for the danger and risk of injury to himself and to his family that resulted from his entry into a public cooperation plea agreement in this case. U.S.S.G. § 5K1.1(a)(4).

With respect to the significance and usefulness of the defendant's assistance (the first and third factors), the defendant provided information about ▌ ▌ Because Schaffer did not participate in the conspiracy to forcibly oppose the lawful

transfer of power, he did not have as much information to share as some other individuals who have cooperated with this investigation, but he fully and credibly answered all of the questions placed before him, and he testified before the grand jury about this information.

Finally, the nature and extent of Schaffer's assistance has been significant. U.S.S.G. § 5K1.1(a)(3). He proffered multiple times with government, and the information he provided was truthful and material.

Taking all of these factors into account, a four-level downward departure would reduce Schaffer's adjusted offense level by about 33 percent from the level 12 final adjusted offense level he would have faced absent his cooperation in this matter. The government submits that such a reduction appropriately reflects the principles outlined above that this Court should consider in assessing the level of assistance Schaffer provided to law enforcement.

### C.   Sentencing Guidelines Recommendation

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. ECF 63 at ¶ 102. Accordingly, based on the government's calculation of the defendant's total adjusted offense level, after acceptance of responsibility, at level 8, the defendant's Guidelines range is 0 to 6 months' imprisonment. Because level 8 is in Zone A of the Guidelines, the Court may impose a probationary sentence. U.S.S.G. §§ 5B1.1(a)(1), 5C1.1(b). In other words, a sentence of three years of probation, with requirements of restitution and community service, among other conditions, would be a Guidelines-compliant sentence at level 8.

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of the government's recommended sentence.

A.      **Nature and Circumstances of the Offense**

As shown in Section II(B) of this memorandum, Schaffer's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. He came to D.C. understanding the potential for a forcible interruption of the certification, he joined the violent rob that forced open doors off of the upper west terrace of the Capitol, and he personally breached the building and contributed to the delay of the proceedings. To make matters worse, he carried a dangerous weapon—bear spray—with him at the time. The nature and circumstances of Schaffer's offense were of the utmost seriousness, and fully support the government's recommended sentence of six months of home confinement as part of his probation.

B.  **The History and Characteristics of the Defendant**

At the time of this offense, Schaffer was gainfully employed. He had no criminal history. In other words, the defendant's crimes on January 6 were an isolated incident in an otherwise law-abiding life, although that fact also Schaffer should have known better and makes his conduct on January 6 hard to comprehend.

C.      **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a significant period of probation, with conditions such as restitution and community service, as part of the defendant's sentence. Schaffer's criminal conduct on January 6 was the epitome of disrespect for the law.

### D. The Need for the Sentence to Afford Adequate Deterrence

Because of the unique circumstances of this case, a probationary sentence is appropriate "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[2] At the same time, early and public acceptance of responsibility, coupled with the time the defendant has already served and his cooperation with law enforcement, is something that should be rewarded, to encourage others to take similar responsibility for their conduct on January 6. For these reasons, a lengthy probationary sentence achieves the goal of general deterrence.

### E. The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. The government is recommending a

---

[2] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

14

Guidelines-compliant sentence, should the Court apply the government's recommended departure for substantial assistance to law enforcement.

### F. Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). The government's recommended sentence does not create unwarranted disparities when one considers that Schaffer's conduct during this offense places him on the less culpable end of defendants who have pled guilty to obstructing Congress on January 6, coupled with the fact that he has already been detained three months, from the date of his arrest through approximately April 16, 2021, that he accepted responsibility at the earliest possible time, and that he provided substantial assistance to law enforcement.[3]

## VII. RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Here, the parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Schaffer must pay restitution, although they did not agree on the precise amount.[5] ECF 29 at 9. As the Presentence Report reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. ECF 63 at ¶81. For the reasons outlined in greater detail in the restitution brief submitted in the related *Rhodes* matter, *see* Case No. 22-cr-15, ECF No. 654, which the government incorporates by reference, the government submits that $2,000 represents an appropriate and proportional amount of restitution for Defendant Schaffer to pay.

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VIII. CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of three years of probation, with the special conditions that the defendant perform 120 hours of community service and pay $2,000 in restitution and the mandatory $200 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY: _____
Kathryn L. Rakoczy
D.C. Bar No. 994-559
Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W., Room 5.236
(202) 252-6928
Kathryn.Rakoczy@usdoj.gov